IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN BROWN, D/B/A LOOKING GLASS PHOTOGRAPHY,<br>    Plaintiff,<br><br>v.<br><br>SUBURBAN LIFE PUBLISHING, LLC, D/B/A SUBURBAN LIFE PUBLISHING GROUP,<br>    Defendant. | CIVIL ACTION<br><br>NO. 10-245 |

<u>MEMORANDUM</u>

**Tucker, J.**                                                                                                         April \_\_\_\_, 2011

This matter is before the Court following a bench trial held on December 6, 2010. Having reviewed the testimony and evidence presented at trial, as well as the submissions of counsel and pursuant to Rule 52(a) of the Federal Rules of Civil Procedure the Court hereby makes and enters the following Findings of Fact and Conclusions of Law.

## I.    FINDINGS OF FACT

A.    <u>Introduction</u>

1. This is an action for copy right infringement and conversion pursuant to 17 U.S.C. § 101 <u>et seq</u>. as amended, and Pennsylvania law. Plaintiff alleges that Defendant unlawfully converted his work and infringed the copyright of six photographs through its reproduction of the images in its publications.

2. Plaintiff, Steven Brown, d/b/a Looking Glass Photography, is a citizen of the Commonwealth of Pennsylvania.

3. Plaintiff is a professional photographer by trade whose rates vary depending upon the

publication. As compensation for his services, Plaintiff typically charges within the range of $55.00 to $1,000.00 per photograph, depending upon the market.

4. Defendant, Suburban Life Publishing, LLC, d/b/a Suburban Life Publishing Group, is a New Jersey Corporation doing business at 106 E. Center Boulevard, Marleton NJ, 08053.

5. John C. Hirth is currently the publisher at Suburban Life Publishing, LLC.

B. <u>Initial Contract</u>

6. In 2007, Mr. Hirth, then publisher and part-owner of a publication known at the time as Lifestyle Magazine, commissioned Plaintff to conduct a photoshoot of Café Alessio, a restaurant located in Doylestown, Pennsylvania.[1] Plaintiff was not contacted directly by Café Alessio.

7. No written agreement was executed between Plaintiff and Lifestyle Magazine.

8. On May 28, 2007, Plaintiff conducted a photoshoot for Café Alessio for the purpose of a one-time run of advertisements in Lifestyle Magazine.

9. Although the photographs were for a single use, Lifestyle Magazine reserved the right and Plaintiff agreed that Lifestyle Magazine could reproduce the photographs within the Lifestyle family of publications. Said family of publications included <u>inter alia,</u> Bucks Living, Montgomery Living and New Town Living.

10. "It was the policy of [Lifestyle] Magazine that Dash Publishing would work with and pay the photographer directly for the limited use of contracted photographs while the

---

[1] In August of 2008, after going through several configurations, Lifestyle Magazine ceased doing business.

photographer retained the rights to his or her work for later reproductions and derivative works." (D'Angelo, Aff. ¶ 5. June, 30, 2010). John D'Angelo, former investor with Lifestyle Magazine attested that "[t]his was the case for Steve Brown's photographs of Café Alessio." ( D'Angelo, Aff. ¶ 6).

11. Mr. D' Angelo further attested that he was "aware of instances in which photographs and advertisement cop[ies] from Bucks and Montgomery Living were reproduced without authorization in magazines with which Mr. Hirth was associated." (D'Angelo, Aff. ¶ 7).

12. Upon completion of the photoshoot, Plaintiff delivered the photographs via email to Andrew Loder, then creative director at Lifestyle Magazine.

13. As compensation for the photographs, Defendant paid Plaintiff $300.00 in currency and $300.00 in trade.

14. Plaintiff did not receive payment from Café Alessio.

15. Plaintiff retained the intellectual property rights to the photographic images.

C. Reproduction of Images

16. In July of 2008, Mr. Hirth left his employment with Lifestyle Magazine and joined Suburban Life Publishing LLC as a publisher. Upon joining Suburban Life Publishing LLC, Mr. Hirth brought Café Alessio on as an advertiser.

17. In October of 2009, Mr. Hirth contacted Plaintiff on behalf of Defendant and requested the licensing rights to reproduce the photographs Plaintiff took during the May 2007 photoshoot at Lifestyle Magazine's behest, depicting the food and atmosphere of Café Alessio.

18. Plaintiff quoted Mr. Hirth $350.00 for the license to use the images in association with the advertisement for Café Alessio, and Mr. Hirth countered with an offer to purchase the images for $250.00 and $100.00 in trade.

19. Finding Mr. Hirth's offer unsatisfactory, Plaintiff declined Mr. Hirth's request, and the conversation between the two ended without an agreement.

20. Notwithstanding his refusal, Plaintiff discovered that the six images appeared, without his authorization and without compensation, in an advertisement for Café Alessio in the October editions of Life in Doylestown and Life in Newtown.

21. Mr. Hirth testified that Defendant charged Café Alessio $1,000.00, half in currency and half in trade to run the advertisement in its publication in the September 2009 edition of its publications. Café Alessio was also charged $1,000.00, half in currency and half in trade to run the advertisement in the October 2009 edition of Defendant's publications. With regard to the November 2009 edition, which included the inside front cover and a full page advertisement, Defendant charged Café Alessio $1,500.00 in currency and $500.00 in trade. Mr. Hirth testified that as it relates to the November 2009 edition, the advertisement which is the subject of this litigation, was that which ran on the inside cover of Defendant's magazine and for which Defendant only received $500.00 in gift cards for that advertisement.

22. Upon discovering the unauthorized reproduction of his images in Defendant's magazines, Plaintiff retained counsel and sent a demand letter to Defendant on October 21, 2009,

requesting that it cease and desist in using the images.[2] In the alternative, Plaintiff requested that Defendant pay a licensing fee for the use of the six images.

23. In response to the October 21, 2009, demand letter, Mr. Hirth contacted Plaintiff via telephone and advised that he could not stop the current reproduction of the images as additional editions were in the process of being printed.

24. During that conversation, Mr. Hirth admitted that the images were also included in the September, October and November editions of Defendant's publications.

25. In addition to the demand letter, on November 14, 2009, Plaintiff sent an email to Edward McCartney, President and part owner of Suburban Life Publishing LLC, requesting payment for Defendant's use of the six images.

26. Attached to Plaintiff's email was an invoice totaling $1,525.00. This figure included $1,400.00 for the licensing rights to the six images and $125.00 in attorney's fees.

27. On November 30, 2009, Plaintiff sent a second email to Mr. McCartney advising that he intended to pursue the matter through litigation. Specifically, Plaintiff stated "I am assuming you are not going to respond. I am going to give my lawyer the go ahead with suit." (Pl.'s Ex. 6)

28. Sometime after Plaintiff sent the November 30, 2009 email, Defendant sent Plaintiff a check for $700, which as of the date of the trial, Plaintiff had in his possession but had not cashed. Plaintiff avers that the payment did not reflect the true value of the use of the six images.

---

[2] The demand letter was sent to Edward McCartney, President, Suburban Life Publishing LLC and a copy was also sent to Café Alessio.

29. On December 16, 2009, Plaintiff filed an application for a Certificate of Registration for the six images with the United States Copyright Office ("USCO"). Subsequently, on January 4, 2010, the USCO issued Plaintiff a Certificate of Registration for the six images at issue.

## II. CONCLUSIONS OF LAW

A. <u>Federal Copyright Infringement Claim</u>

1. The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1338(a).

2. To succeed on a claim of copyright infringement, a plaintiff must establish: (1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work. <u>Kay Berry, Inc. v. Taylor Gifts, Inc.</u>, 421 F.3d 199, 203 (3d Cir. 2005); <u>Dun & Bradstreet Software Servs., Inc. v. Grace Consulting</u>, Inc., 307 F.3d 197, 206 (3d Cir. 2002); <u>Ford Motor Co. v. Summit Motor Products, Inc.</u>, 930 F.2d 277, 290 (3d Cir. 1991); <u>Masquerade Novelty, Inc. v. Unique Industries, Inc.</u>, 912 F.2d 663, 667 (3d Cir. 1990).

3. The Copyright Act of 1976 provides that the owner of a copyright possesses the exclusive right to copy, distribute or display his or her work. 17 U.S.C. § 106; <u>MacLean Assoc. Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.</u>, 952 F.2d 769, 778 (3d Cir. 1991). Although ownership vests initially in the author(s) of the work, said author(s) can transfer ownership of the copyright by selling it or by exclusively licensing it. 1 7 U.S.C. § 101. Exclusive licenses must be memorialized in a writing. <u>Id</u>. at § 204(a). "The law

[however,]does not require an express, or written license. In appropriate circumstances, a license may be implied by conduct." Lowe v. Loud Records, 126 Fed. Appx. 545, 547 (3d Cir. Pa. 2005) (citing MacLean Assoc., Inc., 952 F.2d at 779). An implied license is an affirmative defense to copyright infringement. Nat'l. Assoc. For Stock Car Auto Racing, Inc. v. Scharle, 184 Fed. Appx. 270, 275 (3d Cir. 2006) (citations omitted).

4. Plaintiff asserts that the Certificate of Registration obtained by him on January 14, 2010, establishes the first prong of a cause of action for copyright infringement, namely the ownership of a valid copyright. Pursuant to the Copyright Act of 1976, a Certificate of Registration issued by the USCO constitutes prima facie evidence of the validity and ownership of copyrighted material. Ford Motor Co.,930 F.2d at 290-291.[3] At trial, Plaintiff introduced certified copies of an application for registration submitted to the USCO on December 16, 2009. A Certificate of Registration was subsequently issued by the USCO on January 14, 2010. As such, Plaintiff's copyright is automatically entitled to a presumption of validity and Plaintiff has met his burden of production on this element.

5. The presumption of validity is rebuttable, however, Defendant does not argue that Plaintiff is not entitled to the presumption contained in 17 U.S.C. § 410(c). See Educ. Testing Serv. v. Katzman, 793 F.2d 533, 538 (3d Cir. 1986). In fact, the joint proposed

---

[3]Section 410 of Title 17 of the United States Code governs copyrights and provides:

In any judicial proceedings the certificate of a registration made before or within five years after publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of a registration made thereafter shall be within the discretion of the court.

17 U.S.C. § 410(c).

findings of fact and conclusions of law submitted by the parties stipulates that Plaintiff is the copyright owner of the six photographic images depicting the food and environs of Café Alessio. (Joint Proposed Findings of Facts and Conclusions of Law ¶1.) The Court finds that the registration itself is prima facie proof of Plaintiff's ownership of a valid copyright.

6. Section 102 provides in part, "Copyright protection extends to "original works of authorship fixed in any tangible medium of expression . . . Works of authorship include . . . (5) pictorial, graphic and sculptural works …." 17 U.S.C. § 102. At issue here are six pictures taken by Plaintiff depicting the food and environs of Café Alessio. The Court finds that the images taken by Plaintiff satisfy the Copyright Act's requirement of originality.

7. Having determined that Plaintiff has produced evidence to support his claim that he holds a valid copyright to the images at issue, the Court now turns to Plaintiff's assertion that Defendant infringed his copyright.

B. <u>Absence of an Implied License</u>

7. In the case sub judice, there is no question that Defendant reproduced Plaintiff's photographic images, however, Defendant contends that it possessed an implied license to use the images, at the pleasure of Café Alessio, the company being advertised.[4] (Def.'s

---

[4] Neither party disputes that Plaintiff neither sold nor agreed in writing to license the images at issue to Defendant.

Mem. In Opp'n Summ. J. 8) In support of this argument, Defendant submits an affidavit by Mr. Hirth, now publisher for Defendant, stating that "[o]ther -photo-advertisements and photographs from [Plaintiff] Steven Brown were also run at various times in various publications, each photograph and advertisement being run many times, at the pleasure of the advertiser. Each time Mr. Brown was paid one price for initially shooting the photographs, no matter how many times the advertiser sought to run the photographs or advertisement." (Hirth Aff. ¶ 4.)

8. The Third Circuit has found an implied license where three factors are present: (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes the particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." Scharle, 184 Fed. Appx. at 275 (3d Cir. 2006) (citing Atkins v. Fischer, 356 U.S. App. D.C. 403, 331 F.3d 988, 991-92 (D.C. Cir. 2003)). Here, Lifestyle Magazine, the licensee, requested the creation of Plaintiff's work. Plaintiff, the licensor, created the photographs and delivered them to Andrew Loder, the licensee's creative director, with the intent that Lifestyle Magazine copy and distribute his work within the Lifestyle Magazine family of publications. See Lowe v. Loud Record, 2003 U.S. Dist. LEXIS 21234 *10 (noting that "[a] nonexclusive license may arise by implication where the creator of a work at a defendant's request 'hands it over, intending that defendant copy and distribute it.'" (quoting Effects Assocs., Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990)). Nothing in the record or testimony adduced at trial suggests that Plaintiff intended that Defendant, a separate and distinct entity from that which initially contracted him, have the license to

copy and distribute his work. This Court rejects Defendant's argument that Plaintiff granted an implied license to Café Alessio to advertise the photographs as it saw fit. That the photographs at issue were of Café Alessio does not transform the business relationship which existed between Plaintiff and Lifestyle Magazine to one between Plaintiff and Café Alessio. See Beholder Prods. v. Catona, 629 F. Supp. 2d 490, 494 (E.D. Pa. 2009) (noting that an implied license arises when "the creator delivers the work to the licensee who requested it."). Plaintiff did not deal directly with Café Alessio in establishing the verbal contract or in delivering the final work product. Defendant has failed to satisfy its burden of proof in demonstrating the existence of an implied license. This Court finds that neither Defendant or Café Alessio were parties to the transaction at issue and thus cannot have implied licenses.

9. The Court deems it necessary to point out that Mr. Hirth's previous affiliation with Lifestyle Magazine and current affiliation with Defendant is of no consequence to the Defendant's implied license argument. Mr. Hirth was merely an agent of Defendant and the business relationship which existed was solely between Plaintiff and Defendant, not Plaintiff and Mr. Hirth. Accordingly, the Court rejects Defendant's affirmative defense and finds that Defendant's unauthorized appropriation and reproduction of Plaintiff's work constitutes a violation of the Copyright Act of 1976.

B. State Law Claim of Conversion

10. Because the court has original jurisdiction over Plaintiffs' copyright infringement claim pursuant to 28 U.S.C. § 1338(a), the court will exercise supplemental jurisdiction

Plaintiff's state law conversion claim purusant to 28 U.S.C. § 1367(a).

11. Conversion is "an act of willful interference with the dominion or control over a chattel done without lawful justification, by which any person entitled to the chattel is deprived of its use and possession." Baram v. Farugia, 606 F.2d 42, 43 (3d Cir. 1979) (applying Pennsylvania law). The Complaint alleges that Defendant acquired possession of Plaintiff's intellectual property, namely copies of Plaintiff's photographs and have asserted a right to such intellectual property in a way that is adverse to the owner by selling the property to third parties without authorization or approval by Plaintiff and without sharing any revenue derived therefrom. (Compl. ¶ 34)

12. Section 301 of the Copyright Act expressly preempts state common law or statutory claims that fall within the subject matter of copyright, and that create rights equivalent to any of the exclusive rights created by copyright law. The section provides in relevant part:

> [A]ll legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title.

17 U.S.C. § 301(a).

Pursuant to this provision, a state law claim that invokes rights "that are 'equivalent' to the exclusive rights within the general scope of copyright" is subject to preemption. Orson, Inc. v. Miramax Film Corp., 189 F.3d 377, 382 (3d Cir. 1999). Sections 102 and 103 of the Copyright Act define copyright's subject matter to include inter alia pictural works.

17 U.S.C. §§ 102-03.  Further, Section 106 lists the following exclusive rights that belong to copyright owners: (1) reproduction; (2) preparation of derivative works; (3) distribution by sale, rental, lease or lending; (4) public performance, in the case of motion pictures or audiovisual works; and (5) public display of individual images from motion pictures or audiovisual works. 17 U.S.C. § 106.  There is no question that the works at issue here fall squarely within the subject of the copyright.  The state law claim is not qualitatively different from the underlying federal claim. See Dun.,307 F.3d at 217 (reasoning that where a state law claim is qualitatively different and not subsumed within, a copyright infringement claim, federal law will not preempt the state action.)  Section 106 of the copyright act protects, inter alia, the rights to reproduce and distribute the copyrighted work, 17 U.S.C. § 106.  Plaintiff's conversion claim seeks to protect these very rights.

13. Additionally, Plaintiff's state law claim fails the extra element test, as it does not require Plaintiff to establish an extra element in addition to, or instead of, an act of reproduction, performance, distribution or display that would be prohibited under federal law.[5]  See Dun., 307 F.3d at 217-218 (noting "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, then the right does not lie 'within the general scope of copyright,' and there is no preemption.") (citing Computer Assocs. Int'l v. Altai,

---

[5] Under Pennsylvania law, the elements to the tort of conversion are: (1) deprivation of another's right of property in, or use or possession of, (2) a chattel, (3) without the owner's consent, and (4) without lawful justification. McKeeman v. Corestates Bank, N.A., 2000 PA Super 117, P12 (Pa. Super. Ct. 2000) (Stevenson v. Economy Bank of Ambridge, 413 Pa. 442, 451, 197 A.2d 721, 726 (1964).

982 F.2d 693, 716 (2d Cir. 1992). The conversion claim is identical to Plaintiff's exclusive right to copy, to create derivative works from, and to distribute the copyrighted materials, as provided for in § 106. Accordingly, Plaintiff's conversion claims based on unauthorized possession and copying are thus preempted.

**III. DAMAGES**

13. Plaintiff seeks a maximum of $150,000 in statutory penalties, attorney's fees and costs, an injunction to cease publication of any and all magazines containing illegal copies of Plaintiff's photographs, impoundment of all copies of magazines containing illegal copies of Plaintiff's photographs, and a full accounting and disgorgement of all profits from the illegal copying and distribution of Plaintiff's photographs.

14. Pursuant to the Copyright Act, in addition to the recovery of actual damages, copyright owners are entitled to recover an infringer's profits attributable to the infringement to the extent that such profits are not taken into account in computing actual damages. 17 U.S.C. § 504(b).[6]

**BY THE COURT**:

/s/ Petrese B. Tucker
_____
**Hon. Petrese B. Tucker, U.S.D.J.**

---

[6] Defendant shall submit an accounting of all profits from the unauthorized reproduction and distribution of Plaintiff's photographs. Defendant shall also submit documents establishing any deductible expenses and the elements of profit attributable to factors other than the copyrighted work.